James E. Brown
MT Bar 8916
THE JAMES BROWN LAW OFFICE, PLLC
PO BOX 1003
DILLON, MT 59725
Telephone: (406) 449-7444
Facsimile: (406) 443-2478
Email: Jim@thunderdomelaw.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| CAPITAL TRAIL VEHICLE ASSOCIATION, CITIZENS FOR BALANCED USE, KEN SALO, a Montana Citizen, JODY LOOMIS, a Montana Citizen; AND Patricia J. Daugaard, a Montana Citizen. | Cause No. |
| | Judge |
| **PLAINTIFFS,** | **PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| U.S. FOREST SERVICE, a federal agency, the UNITED STATES DEPARTMENT OF AGRICULTURE, a federal department, THE U.S. Forest Service, Northern Region; the HELENA NATIONAL FOREST; and EMILY PLATT, in her official capacity as Forest Supervisor for the Lewis and Clark National Forest; | |
| **DEFENDANTS.** | |

Comes now Plaintiffs, and for their Complaint against Defendants, state and allege:

### INTRODUCTION:

1. The Capital Trail Vehicle Association ("CTVA"), Citizens for Balanced Use ("CBU"),

   Ken Salo, Jody Loomis, and Patricia J. Daugaard (collectively "Plaintiffs"), bring this

civil action for declaratory and injunctive relief against Federal-Defendants ("the U.S. Forest Service" or "the Service" or the "USFS") pursuant to the Administrative Procedure Act ('APA"), 5 U.S.C. §701 et seq. for violations of the National Forest Management Act ("NFMA"), 16 U.S.C. §1600 et. seq. and the National Environmental Policy Act, 42 U.S.C. §§ 4331 et seq. ("NEPA").

2.  Plaintiffs seek an order from this Court requiring the Forest Service to comply with controlling law while managing the Helena National Forest and the Divide Travel Plan thereto.

3.  The Divide Travel Plan has imposed significant restrictions and limitations on long-existing recreational access to the Helena National Forest.

4.  The Travel Plan has greatly reduced motorized access by roughly forty-five (45) percent on existing roads and routes within the Helena National Forest.

5.  Plaintiffs challenge the Forest Service's decision to close an estimated 144 miles of roads in the Helena National Forest ("HNF") to all vehicle use, which such roads and trails have been historically and lawfully used by the public for recreation and lie within an area that is ideal for motorized recreation and designated for multiple use.

6.  The decision to close the popular Sweeny Creek area, with the exception of Priest Pass Road, constitutes a clear case of the Service failing to maintain and protect public access to the HNF.

7.  Plaintiffs also challenge the Service's decision and related failure to properly maintain, manage and protect public access rights to large swaths of the HNF, which such failure has resulted in shutting down roads and trails that previously connected to Lewis and

Clark County roads and trails that are part of the officially designated transportation system.

8. As time has borne out, the Service's challenged decision is based on a flawed implementation of the Forest Service's 2005 Travel Management Rule as the same is reflected in the Helena National Forest Divide Travel Plan Record of Decision ("ROD") of the HNF.

9. In promulgating the Travel Management Rule, the Department of Agriculture recognized that most National Forest visitors use motor vehicles to access the National Forest system, whether for recreational sightseeing, camping, hiking, or hunting and fishing

10. Further, the Department of Agriculture acknowledged that most visitors to National Forests consider motor vehicle travel to be an integral part of their recreational experience. Fed. Reg. Vol. 70, No. 216 at 68264 (Nov. 9, 2005).

11. The HNF has long provided the public with diverse opportunities for motorized recreation and access to and within the Forest.

12. And the Service's decision to adopt the ROD for the Divide Travel Plan, which failed to properly analyze the environmental and social impacts of its final decision to shut off motorized recreation and access to areas long utilized by the public, violates NFMA, NEPA and the Travel Management Rule, 36 C.F.R. Part 212 ("TMR").

13. Accordingly, Plaintiffs seek declaratory and injunctive relief to hold unlawful and to set aside the road/trail closures and designations and two use maps, as well as seek an award of costs and attorneys' fees. 5 U.S.C. §706; *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971), and 28 U.S.C. §2412(d) & 5 U.S.C. §504 et. seq.

## III. JURISDICTION AND VENUE

14. Plaintiffs bring this action pursuant to the judicial review provisions of the Federal Administrative Procedure Act, 16 U.S.C. §§701-706.

15. The APA embodies "a basic presumption of judicial review." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967)

16. This Court has jurisdiction pursuant to 16 U.S.C. §1540(g) and 28 U.S.C. §1331 (federal question), §2201 (declaratory judgment), and §2202 (further relief,) §2412 (costs and fees) and §1346 (United States as a defendant).

17. Defendant's decision to adopt the Record of Decision for the Divide Travel Plan constitutes the Service's final agency action that is subject to judicial review under the APA.

18. An actual, justiciable controversy exists between Plaintiffs and Defendants.

19. Venue is proper in this district under 28 U.S.C. §1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, in the Helena National Forest, and because the Service maintains an office in this district.

20. The United States waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

## IV. PARTIES

21. Plaintiff CTVA is a local, Montana 501(c)(3) nonprofit organization formed to preserve trails and roads for all recreationalists by means of responsible site-specific environmental protection activities and through public education efforts and outreach. CTVA has roughly 200 members.   CTVA's members and supporters have traditionally

and still visit, use, and enjoy the Helena National Forest by such means as motorcycles, all-terrain and side by side vehicles, jeeps/4-wheel drives, snowmobiles etc.

22. CTVA, through its members, works on the grounds to develop and enact projects that protect public access to and use of public lands and to restore economic resilience to local communities and businesses which rely upon proper management of national forests located in Montana.  CTVA members have, on numerous occasions and over many, many, years, assisted the Service in actively managing motorized travel and in enhancing public access to public lands within national forests, including the Helena National Forest.

23. CTVA and its members have procedural interests in ensuring that Forest Service activities comply with all applicable federal statutes and regulations.  This is because, in part, CTVA have concrete plans to enjoy future recreating and traveling within the Helena National Forest, including on those areas, roads and routes, prohibited or closed by the Final ROD.

24. CTVA's members attended public meetings, submitted input to the Forest, filed an objection, and otherwise participated in the process that generated the Travel Plan.

25. Plaintiff Citizens for Balanced use is a grass roots 501(c)(3) non-profit, Montana public benefit corporation organization dedicated to educating the public on the social, economic and environmental benefits of multiple use recreation.  CBU has over 1800 individual members who reside throughout Montana, including in areas of Montana proximate to the Helena National Forest.  Further, CBU has 25 organizational members.

26. CBU was formed for the purpose of preserving and enhancing recreational access opportunities onto federal lands, including lands managed by the USFS.  CBU and its

members have, for many years, been active in working with the Service as well as other interest groups in ensuring the proper and lawful management of motorized use on and within national forests located in Montana, including the Helena National Forest.

27. CBU members use motorized and non-motorized means, including use of off-highway vehicles, snowmobiles, etc. to access state and federally-managed lands in the Helena National Forest that are at issue in this suit.   CBU and its members participated in the administrative process culminating in the Travel Plan.   As such, CBU and its members have procedural interests in ensuring that Forest Service activities comply with all applicable federal statutes and regulations.

28. Plaintiff Jody Loomis is a resident of the State of Montana.  He is a member of CTVA and CBU.  Loomis has, for many years, recreated in almost every area of the Helena National Forest, including in the Sweeny Creek and the Kading-Limburger Springs area.

29. Among those activities enjoyed by Loomis are camping, weekend drives, sightseeing, picnicking, snowmobiling, four-wheeling, etc.

30. Loomis is unable to fully recreate, namely through motorized means, in those aforementioned areas due to the closures set forth in the Divide Travel Plan.

31. Such closures have resulted in Loomis being unable to access areas of the Helena National Forest that he has long enjoyed, whether such access was through motorized or non-motorized means.  This has resulted in diminishment of Loomis' recreational and aesthetic interests when in the Helena National Forest.

32. If public access is restored to those areas now closed off by the Divide Travel Plan, Loomis would once again access, recreate in, and enjoy those areas.

33. Plaintiff Patricia J. Daugaard is a resident of the State of Montana.  She is a member of CTVA.

34. Plaintiff Daugaard has recreated within the Helena National Forest for decades.  She has previously recreated on routes that have now been closed by the Forest Service through the Travel Plan, such as all routes in the Sweeny Creek area.  Among those activities Daugaard previously enjoyed in areas closed under the Divide Travel Plan are ATV driving, snowmobiling, and camping.

35. If the Plaintiffs are to succeed in this lawsuit and the Divide Travel is restored to its prior version, Daugaard's recreational, scenic, aesthetic, and public land use interests will be vindicated and preserved.

36. Plaintiff Ken Salo is a resident of Lewis and Clark County, Montana.  Salo is a member of both CBU and CTVA.

37. Salo has been a long-time user of trails and roads within the Helena National Forest.  Among those activities undertaken by Salo are motorcycling, side by side riding, RVs and camping, hiking, wildlife watching, good stewardship of lands, among others.

38. Salo has long-experience in and is well-experienced in areas of the natural environment.  Salo has strong concerns about the natural environment and recreational impact of the Divide Travel Plan as adopted.  Such concerns include the environmental impact of the decision to concentrate motorized use into a smaller and smaller area of the HNF, which is having the impact of overcrowding remaining open trails and routes. Salo is also concerned about the quality of the human environment including health and safety.

39. Salo believes the Travel Plan is further problematic in that, for decades, the areas now closed by the Travel Plan were open to motorized use and in turn, easily accessible to

recreationalists of all ages and physical abilities.  The closures have cut off access to large swaths of the forest to a large segment of Montana's citizens.

40. The harms to Salo's recreational, environmental, public use, and aesthetics interests can and will be redressed by a decision in Plaintiffs' favor.

41. Association Plaintiffs bring this action on their own behalf, as well as on behalf of their members and supporters, some of whom live in or near areas affected by the new motorized use designations on the HNF or whom visit the area for camping, photography, and other recreational and professional pursuits.

42. Association Plaintiffs' members, supporters, and staff gain enjoyment from motorized recreation on the HNF.  And, as such, proper management of the HNF, including proper application of the Divide Travel Plan, is of significant interest and value to the Plaintiffs' members, supporters, and staff – and, in turn, increases their use and enjoyment of public lands.

43. Plaintiffs' members, supporters, and staff have engaged in the activities described above in the past, and intend to do so again in the future.

44. The Service's adoption of the Divide Travel Plan ROD has significantly degraded the activities and enjoyment experienced by Plaintiffs and their members, supporters and staff on the HNF.  Thus, the legal allegations set forth in this Complaint cause direct injury to the conservation, recreational, educational, and environmental interests of Plaintiffs and their members and supporters.

45. Plaintiffs' members, supporters, and staff have an interest in ensuring the Forest Service complies with all applicable federal statutes and regulations in making determinations as to motorized use and motorized use designations on public lands.

46. Plaintiffs and their members and supporters have an interest in ensuring the Forest Service follows legally required procedures that involve the public, and that it takes the requisite hard look at impacts from motorized use designations and closures.

47. The interests of Plaintiffs, their members, and supporters have been, are being, and unless the relief prayed for in this Complaint is granted, will continue to be adversely and irreparably injured by Defendants' failure to comply with federal law and regulation. Plaintiffs' injuries are actual and concrete, and are traceable to the Service's conduct and such injuries can be redressed by the requested relief.

48. Plaintiffs have no other adequate remedy at law.

49. Defendant U.S. Forest Service is a federal agency of the United States within the U.S. Department of Agriculture.  The Forest Service is responsible for managing National Forest lands, including the HNF, and ensuring that the Service's activities comply with NEPA, the TMR, and NFMA.

50. Defendant U.S. Forest Service, Northern Region, sometimes referred to as Region 1, is a subunit of the Forest Service that oversees and administers about 25 million acres of National Forest System, including acreage located in Montana.  Included within this area and administered by the Northern Region is the HNF.

51. Defendant Helena National Forest is a submit of the United States Forest Service within the Northern Region.  The Forest's main office is located in Helena, Montana.

52. Defendant Emily Platt is the Forest Supervisor for the Lewis and Clark National Forest. Defendant Platt is responsible for management of the HNF and the Service's compliance with NEPA, the TMR and NFMA.  Defendant exercises control in implementing the ROD challenged herein.  Plaintiffs are suing Platt in her official capacity.

## V. LEGAL BACKGROUND

**A.  The National Environmental Policy Act**

53. NEPA "is our basic national charter for protection of the environment."  40 C.F.R.

    §1500.1(a).

54. NEPA has two fundamental purposes.  These being: (1) to guarantee that federal agencies

    take a 'hard look' at the consequences of their actions before the actions occur in order to

    ensure that 'the agency, in reaching its decision will have available, and will carefully

    consider, detailed information concerned significant environmental impacts; and; (2) to

    ensure that 'the relevant information will be made available to the larger audience that

    may also play a role in both the decision making process and the implementation of that

    decision." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

55. NEPA requires federal agencies, such as the Forest Service to prepare a detailed

    Environmental Impact Statement ("EIS") for all major federal actions that may

    significantly affect the quality of the human environment. 42 U.S.C. §4332(2)(C).

56. Under the Service's NEPA regulations, a proposal is subject to NEPA when: 1) the

    agency has a goal and is actively preparing to make a decision on one or more alternative

    means to accomplish that goal and effects can be meaningfully evaluated; (2) the

    proposed action is subject to Forest Service control and responsibility; (3) the proposed

    action would cause effects on the environment; and (4) the proposed action is not

    statutorily exempt from the requirements of section 102(2)(C) of NEPA; 36 C.F.R.

    §220.4(a).

57. The Forest Service's NEPA regulations require scoping in accordance with the requirements of 40 C.F.R. §1501.7 for all proposed Forest Service actions, including those that may be categorically excluded from further analysis and documentation in an Environmental Assessment ("EA") or EIS.  36 C.F.R. §220.4.

58. If a proposed agency action is not subject to a categorical exclusion ("CE", then the agency must prepare an EA to determine whether it needs to prepare an EIS 40 C.F.R. §§1501.4(b), 1508.4, 1508.9; see also 36 C.F.R. §220.6(c).  An EA is a concise public document that briefly describes the proposal, examines alternatives, considers environmental impacts, and provides a list of individuals and agencies consulted.  40 C.F.R. § 1508.9.  If the agency concludes there is no significant impact associated with the proposed project or activity, it may issue a finding of no significant impact ("FONSI") in lieu of preparing an EIS.  40 C.F.R. §1508.9(a)(1).

59. NEPA analysis must consider a range of reasonable alternative actions and thoroughly assess direct, indirect, and cumulative environmental effects of the proposed alternative actions.  42 U.S.C. § 4332(2)(C); 40 C.F.R. parts 1502 and 1508.

**B.  The Travel Management Rule**

60.  In 2005, the Forest Service finalized the "Travel Management Rule," which is codified at 36 C.F.R. Part 212. Id. at 68,264.

61. The TMR requires that "[m]otor vehicle use on National Forest roads, on National Forest system Trails, and in areas on National Forest System lands shall be designated by vehicle class.  And, if appropriate, classified by time of year by the responsible official on administrative units or Ranger Districts of the National Forest System."  36 C.F.R. §212.51(a).

62. All motorized use designations, including revisions of classes of vehicles that may use a particular road, are to be made only after completion of a public process that includes notice and comment consistent with agency procedures under NEPA. 36 C.F.R. §212.52(a).

63. Under the TMR's "[g]eneral criteria for designation of" roads, trails, and areas, the Forest Service shall consider effects on National Forest System natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses of National Forest System lands, the need for maintenance and administration of roads, trails, and areas that would arise if the uses under consideration are designated; and the availability of resources for that maintenance and administration. 36 C.F.R. §212.55(a).

64. The Rule also includes "[s]pecific criteria for designation of roads" under which the Forest Service "shall consider: (1) speed, volume, composition, and distribution of traffic on roads; and (2) compatibility of vehicle class with road geometry and road surfacing." 36 C.F.R. §212.55(c).

65. The route designation process culminates in the Forest Service's adoption and publication of a use map "reflecting designated roads, trails, and areas" that can be used by motor vehicles in the forest. 36 C.F.R. §§ 212.1, 212.50, and 212.56.

66. The use map may cover an entire forest or individual ranger district, and it depicts routes that are open to motor vehicle use. The Service's publication of a use map completes the designation process and results in the official and enforceable prohibition of motor vehicle use anywhere off of the designated system. 36 C.F.R. §261.13.

67. The Service may subsequently revise the designations, but revisions shall be made in accordance with the requirements for public involvement set forth in 36 C.F.R. §212.55,

and shall be reflected on a motor vehicle use map pursuant to 36 C.F.R. §212.56.  36
C.F.R. § 212.54.

**C.  The Administrative Procedures Act**

68. The APA addresses and regulates the function of executive branch administrative
    agencies within the U.S. system of open government.

69. Among such functions, the APA represents a waiver of sovereign immunity by the
    United States and outlines the circumstances in which 'final agency action' may be
    subject to judicial review, as well as the standards of review to be applied in such
    challenges.

70. Since many statutes and regulations do not provide for a private of action, the APA
    provides jurisdictional basis for judicial review of administrative decisions by federal
    land management agencies applying statues like NFMA, NEPA and the Travel
    Management Rule to public lands like those contained in the HNF.

**D.  The National Forest Management Act**

71. NFMA provides the statutory framework for management of the National Forest system.
    In promulgating NFMA, Congress has acknowledged that the Forest Service must
    balance competing demands in managing National Forest system lands.  Since Congress'
    early regulation of the national forests, it has never been the case that "the national forest
    were . . . to be 'set aside for non-use.'"  *The Lands Council v. McNair*, 537 F.3d 981, 989
    (9th Circ. 2008) (*en banc)(citations omitted*).

72. Additional guidance, incorporated expressly within NFMA, is found in the Multiple-use
    Sustained Yield Act ("MUSYA"), which provides that the various surface resources be
    managed "so that they are utilized in the combination that will best meet the needs of the

American people" and to achieve and maintain in perpetuity a high-level annual or

regular periodic output of the various renewable resources of the national forest without

impairment of the productivity of the land." 16 U.S.C. §531(a) (definition of "multiple

use") and (b) (definition of sustained yield"); 16 U.S.C. §1604(g)(incorporating MUSYA

provisions in NFMA).

73. MUSYA further directs "that the national forests are established and shall be

administered for outdoor recreation, range, timber, watershed, and wildlife and fish

purposes." 16 U.S.C. §528.

74. NFMA requires each Forest to prepare and revise a Land and Resource Management Plan

("Forest Plan"). 16 U.S.C. §1604. A Forest Plan lays out broad guidelines to advance

numerous goals and objectives, including to ensure "consideration of the economic and

environmental aspects of various systems of renewable resource management, including

the related systems of silviculture and protection of forest resource, to provide for

outdoor recreation, range, timber watershed, wildlife, and fish . . ." *Id.* at (g)(3)(A).

75. These plans contain desired conditions, objectives, and guidance for project and activity

decision making, but do not approve or execute projects and activities. The guidance in

the Forest Plan is subject to change through plan amendment in site-specific or project-

level planning, or through revision of the Forest Plan itself.

76. A Forest Plan is the governing land use plan for an individual National Forest. A Forest

Plan is strategic in nature, and does not make commitments to selection or specifications

of any particular project or daily activities. The Forest Plan also identifies standards and

guidelines to govern specific activities subject to more detailed project-level or site-

specific planning.

77. Project level planning occurs for a broad spectrum of projects and activities within the Forest Service system, including vegetation management and timber projects, mining plans of operation, ski area development and operations, special use management such as guiding and outfitting, and travel management.  This more detailed site-specific planning includes analysis of on-the-ground management options and associated effects to the human environment for each specified option.

78. An example of project-level planning affecting Plaintiffs' interests occurs in travel planning when a Forest implements the agency's Travel Management Rule.  See, 70 Fed.Reg 68264-68291 (Nov. 9, 2005).

## VI.    FACTUAL BACKGROUND:

*A.  The Helena National Forest.*

79. The Helena National Forest stretches 2.8-million acres through central and north-central Montana.

80. The Forest is comprised of island mountain ranges bisected by the Continental Divide and Missouri River and includes 6 ranger districts: Lincoln, Helena, Townsend, Judith - Musselshell, Rocky Mountain, and Belt Creek - White Sulphur Springs and 2 Forest Supervisor's offices located in Helena and Great Falls to oversee forest management in 17 counties.  See, Forest Service webpage located at https://www.fs.usda.gov/hlcnf.

81. Recreation is especially important on the HNF and an important contributor to the local community and economy.  Recreation is also a draw to visitors from the region and beyond. Popular recreation activities include fishing, hunting, gathering forest products, hiking, riding wheeled off highway vehicles ("OHV") and snowmobiling.  Indeed,

recreation has become a dominant use of the National Forest system. *See, Laitos &*
*Reiss, Recreation Wars for Our Natural Resources.* 34 Envtl. L. 1091 (2004).

82. Many visitors to the HNF including Plaintiffs, find unique enjoyment in the maintenance, navigation, operation or riding experience associated with motor vehicle and snowmobiling recreation.

83. Motor vehicle access is additionally a critical basis for nearly all forms of recreation on the forest, as even "nonmotorized" forms of recreation such as hiking, horseback riding, backcountry hunting, etc., rely on vehicle access to a staging area or trailhead that facilities enjoyment of the targeted activity and destination(s). Motorized vehicle use is critical to visitor enjoyment of the HNF.

*B. Relevant Background for the Divide Travel Plan*

84. On March 1, 2016, Defendant U.S. Forest Service signed the Divide Travel Management Record of Decision. The decision made significant changes to the existing motorized public access routes and enacted prohibitions for wheeled and over-snow motorized vehicles on public lands within the Divide Travel Planning area on the Helena Ranger District.

85. The ROD adopted, for the most part, alternative 5 from the final environmental impact statement (FEIS) as the final travel plan.

86. As clearly noted in the ROD, the motorized opportunities set forth in the final decision most closely align with those opportunities set forth in FEIS alternative 5.

87. As recognized by the Defendants, the final decision closed roads and trails that had, up to that time, been open for motorized use.

88. And, as recognized by the Defendants, the existing roads and trails within the planning area were in good condition and were not causing resource damage on the landscape.

89. Yet, even so, the Record of Decision approved the closure of roughly 45 percent of previously existing milage for trails and roads – reducing open road and trails from 317 miles to 173 miles.

90. The Forest Service's final decision imposed significant restrictions on existing recreational use of the HNF.

91. Among the restrictions adopted and imposed were the year-long closure of all routes in the Sweeny Creak area to motorized use, including over-snow vehicles. This action resulted in the closure of an estimated 20 miles of motorized trails.

92. The Decision also closed yearlong access to wheeled motorized vehicles to National Forest System Routes 136-D1, 1802-B2, U-200 and portions of 622, resulting in an estimated closure of 14 miles of the Continental Divide National Scenic Trail

93. Further, National Forest system Road 227-E1 beyond the Kading campground has been closed to non-motorized use. This resulted in closure of high quality 4-wheeler routes.

94. The Decision further closed multiple spur and parallel routs within the HNF.

95. What is more, the Decision closed a significant number of historic dispersed campsites.

96. The aforementioned restrictions and closures are backed by various Forest Service rationales, which are individually or collectively flawed – including subjective rational such as closing areas to motorized use "I felt were necessary to address the needs of the resources . . .". *See* Statement of William Avey, former Forest Supervisor at ROD Page 1.

**LEGAL CLAIMS:**

**COUNT I -- The Divide Travel Plan failed to give the required hard look required under NEPA of implementing Alternative 1 as the environmentally preferred alternative**

97. Plaintiffs hereby incorporate by reference each statement allegation previously made and further allege:

98. The Council on Environmental Quality (CEQ) regulations direct the decision maker, the Forest Service in this instance, to identify the environmentally preferred alternative, which is defined as the alternative that best meets the goals of section 101 of NEPA.

99. At its inception, the Divide Travel Plan planning process set forth two alternatives for the public to consider during the scoping process.

100.    Alternative 1 set forth the 'No Action' alternative.  By law, a 'No Action alternative is required to be set forth under NEPA regulations.  See, 40 CFR 1501.14(d).

101.    For the presently challenged Divide Travel Plan, the no action alternative would have, if selected, deferred implementation of the Travel Management Rule would not have resulted in the adoption of a revised Motor Vehicle Use Map.

102.    If alternative 1 was selected as the preferred alternative, no changes would have been made to the existing system of available public motorized routes and areas within the Divide Travel Planning area.

103.    As noted, NEPA required the Forest Service to take a hard look at the direct, indirect and cumulative impacts of its final decision.

104.    As that legal requirement is applied to the present case, the record demonstrates that the Forest Service failed to take a hard look at adopting alternative 1 as its preferred environmental alternative.

105.     Prior to the adoption of the now-challenged ROD, the now closed trail and roads within the HNF had long been open to and accessible for public use, including motorized use.

106.     In the ROD, William Avey specifically noted that the existing travel system for the HNF had been in place for many years, resulting in roads and trails that were "in good condition and are not causing resource damage on the landscape." ROD at p. 1.

107.     Yet, the ROD made substantial changes to the then existing travel system for the HNF – a system that had worked well for forest users of all stripes, including, as noted, fully closing the Sweeny Creek area to motorized use, including use of over-snow vehicles. This closure was not even contemplated in either of the two original plan alternatives.

108.     Under NEPA, federal agencies are required to rigorously explore and objectively evaluate all reasonable alternatives and to discuss the reasons for eliminating any alternatives. 42 U.S.C. §§ 4332(2)(C)(iii), 4332 (E) and 40 C.F.R. § 1502.14.

109.     The alternatives section is considered the "heart" of an Environmental Impact Statement. 40 C.F.R. §1502.14

110.     The record in this case makes clear that the Forest Service never intended to adopt Alternative 1, the no-action alternative, as its preferred alternative. From the onset of the planning process, The USFS had made up its mind, before receiving and analyzing public comment, that it would close motorized and other forms of access to parts of the HNF.

111.     In doing, the Forest Service unlawfully made a pre-determination that it would reduce motorized use in the HNF in order to enhance the interests of other forest users, namely the non-motorized community. This decision resulted in adoption of an

alternative, alternative 5, that failed to minimize the adverse effects of closure of the entire Sweeny Creek area, and severely restrict the ability of the public to engage in motorized access and recreation, dispersed camping, game retrieval, firewood cutting, and firewood retrieval.

112.    The unlawfulness of the Forest Service's range of alternativeness analysis is further demonstrated by the fact that the Service never proposed or considered an alternative to address the public's need for more motorized access and opportunities within the HNF.

113.    There are more than 100,000 active OHV recreationalists residing in Montana. For many Montanans, including Plaintiffs herein, use of public lands and access thereto through motorized means are their top priority for the Helena Travel Plan project area. Yet, the final environmental impact statement supporting the ROD does not consider or analyze an alternative that expanded motorized use or opportunities despite public comment that the Forest Service do so.

114.    A NEPA analysis is invalidated by the existence of viable, but not properly examined, alternative.  As such, the Forest Service has violated its clear legal duty under NEPA to take a hard look at all proffered alternatives, namely the legally required "no-action" alternative or an alternative that increased motorized access and opportunities.

115.    Defendant Forest Service's actions have resulted in harm and injury to Plaintiff's protected interests, which can be redressed by judicial relief.

116.    Defendant USFS's actions are, as set forth above, made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law, namely NEPA, in excess of statutory jurisdiction, authority, or limitations, without observance of

procedure required by law; or otherwise in violation of the APA, 5 U.S.C. §706(2), and should therefore be declared unlawful and set aside by this Court

**COUNT II – the Forsest Service's decision to close year-round all motorized access to and within the Sweeny Creek is a decision that is arbitrary and capricious and otherwise not in accordance with law, namely NFMA and NEPA.**

117.    Plaintiffs hereby incorporate by reference each statement allegation previously made and further allege:

118.    As noted, the ROD for the Divide Travel Plan selected Alternative 5 as the environmentally preferred alternative.

119.    According to the ROD, the alternative was not originally proposed by the Forest Service as the proposed action during the original scoping and comment period.

120.    Rather, alternative 5 was developed late in the public process, namely in response to comments submitted on the draft environmental impact statement (DEIS) and field reviews.

121.    There were no public hearings or meetings held on the late-developed alternative.

122.    Among changes made by alternative 5 to the DEIS were closing routes within the Limburger Springs area, closure of motor vehicle access for a roughly 2-month period in fall, completely closing Sweeny Creek to motorize use,

123.    The closure of Sweeny Creek was proposed roughly 6 years after the start of the public comment period, and the Forest Service provided very little time and a clearly

inadequate time period of seven (7) days for the public to provide written comment on this proposal.

124.     The Forest Service's decision to close Sweeny Creek, to close portions of the Limburger Springs area and to impose significant restations on dispersed campaign at the 11th hour violates NEPA by depriving the public and interested parties of a meaningful opportunity to thoroughly consider and to provide adequate public comment on final decisions that significantly impact the environment.

125.     Further, the Forest Service has violated NFMA, its implanting regulations, and the Travel Management Rule by proposing an arbitrary and capricious alternative and making final decisions on public road and disbursed camping opportunities that came about after the closure of the comment period on the DEIS without providing site-specific analysis for the closures.

126.     The Final ROD indicates, in Appendix X, that the Sweeny Creek area closure was done due to the area's "high value as wildlife habitat and limited opportunity for motorized use." The Travel Management Rule does not lawfully allow for consideration of ideological, philosophical, or personal preferences as basis for route designations and closures. And, outside of the aforementioned subjective statement that area closures support the high value of wildlife habitat, the record fails to demonstrates that adequate site-specific analysis was performed to support the Sweeny Creek closure.

127.     Further, the Forest Service has, through is substantial closures of long-existing roads and trails within the HNF such as those contained within the Sweeny Creek area, violated the 2005 Travel Rule by failing to properly analyze and balance the needs of the recreating public for recreational use and access.

128.     The ROD adopting the Divide Travel Plan imposes arbitrary and inflexible public use and access restrictions and closures in entire areas like Sweeny Creek, as well as along individual routes and other areas, such as in the Kading-Limburger Springs area, and portions of the Continental Divide National Scenic Trail, which such restrictions and closures are arbitrary and capricious, not supported by substantial evidence, or otherwise are not in accordance with law.

129.     Defendant Forest Service's actions described above are made reviewable through the APA and are in violation of the APA, 5 U.S.C. §706(2.  Therefore, the ROD and associated travel maps should be declared unlawful and, in turn, set aside by this Court.

130.     Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from this Court.

131.     Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associated with their use and enjoyment of the HNF as a result of the allegations contained in this claim for relief; and these injuries will go unredressed absent judicial relief.

**COUNT III – Unlawful programmatic closure of areas of the HNF to motorized travel.**

132.     Plaintiffs hereby incorporate by reference each statement and allegation previously made and further allege as follows:

133.     The designation of a road, trail, or area for motorized travel is a project-level decision that requires site-specific analysis under NEPA.

134.     The ORD and associated 2016 use maps constituted proposed actions subject to NEPA requirements.  36 C.F.R. §220.4(a).

135.    The Travel Management Rule prescribes a method by which roads, trails and areas may be designated for motorized travel.

136.    The Travel Management Rule requires and outlines the type of site-specific analysis implicit in such travel designations.  The Travel Management Rule is a project-level decision-making process whereby the Forest Service can determine and formalize the suitability of specified motorized travel on specific sites in a project area.

137.    The aforementioned project-level analysis can be characterized as a program-level "zoning type designation, typically made in a Forest Plan, where broad areas are prescribed for certain types of uses.

138.    Pursuant to its Travel Management Rule obligations, the Forest Service has, and had, a responsibility per the 3-State OHV record of decision to provide site-specific analysis on all OHV routes.  To this end, while the FEIS refers to the 3-State ROD multiple times, it fails to meet the site-specific analysis requirement for each and every existing motorized route, such as by failing to conduct wildlife studies and gathering site-specific motorized user data.

139.    Contrary to these principles and in violation of the spirit and express language of the Travel Management Rule, the Divide Travel Plan unlawfully imposes substantial prohibitions on motorized travel and use within the HNF, and in some instances mechanized, travel across entire areas contained within the HNF, including Sweeny Creek without adequate site-specific data, studies and analysis.

140.    The Forest Service's decision to impose substantial closure has resulted in the loss of many historic routes, trails and roads, which has unlawfully limited public access to

recreational opportunities for senior citizens, retirees, handicapped persons, and younger recreationalists.

141.     One such closure decision resulted in closure of 14 miles of motorized travel along the Continental Divide.  This action was taken in direct violation of the CSNT EIS and ORD.  Further, such action was taken in direct contrast to letters from the Regional Forester that pledged to keep all existing motorized sections of the CDNST open to motorized use and recreation.

142.     The Service's failure to conduct proper site-specific analysis prior to adopting the ROD and the 2016 use maps constitutes a violation of NEPA 42 U.S.C. §4332(2)(C), 40 C.F.R. Part 1500 *Et. seq.*

143.      Defendant Forest Service's actions described above are made reviewable through the APA and are, on their face, arbitrary, capricious, or otherwise not in accordance with law or jurisdictional authority in violation of the APA, 5 U.S.C. §706(2).  Therefore, the ROD and associated decision maps should be declared unlawful and set aside by this Court.

144.     Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.

145.     Plaintiffs have suffered, and will continue to suffer harm and injury to their legal interests arising from and associated with their use and enjoyment of the HNF as a result of the allegations contained in this claim for relief; and these injuries will go unredressed absent judicial relief.

     **COUNT IV –  Violations of the Travel Management Rule, NEPA, and NFMA due to the Forest Service's failure to take a 'hard look' at the economic or social**

**effects of its final decision to reduce public lands access and by its failure to**

**sufficiently consider how the ROD and its associate use maps affect the provision of**

**recreational opportunities, access needs, and cultural resources.**

146.    Plaintiffs reallege and incorporate by reference all allegations presented in the

preceding paragraphs and further allege as follows:

147.    All motorized use designations require that an environmental impact statement

properly analyze and discuss the impacts on the decision on the 'human environment'.

See, 40 C.F.R. § 1508.14.

148.    The project area involved with the Divide Travel Plan has, historically, been used

and accessed by, among others, tourists, the elderly, the disabled and youth.  These roads

and trails, including spur roads, were always open to the public and it was entirely lawful

for Plaintiffs and others to use them for motorized access and recreation, such as hunting

and camping.

149.    Such use is in keeping with the April 1986 Helena National Forest Plan stated that

the Forest-Wide direction for road use would be to generally keep the Forest open for

vehicles.  See, p. II-30.

150.    Further, such open public lands use is in keeping with off-road vehicle use

throughout the United States.  From 1982-2000, ORV use increased by over 109 percent,

with all-terrain vehicle use growing 40 percent between 1997 and 2001.  70 Fed. Reg.

68,264, 68,285 (Nov. 9, 2005)(Travel Management Rule, codified at 36 C.F.R. pt 212,

251, 261, and 295.

151.     This is particularly true of the Sweeny Creek Area given the Area's very close proximity to Helena and the ease by which recreationalists and tourists were able to access this portion of the HNF.

152.     As noted, the ROD and its associated maps close off and/or shut down motorized access to vast swaths of the HNF.

153.     The record demonstrates that the Forest Service failed to properly analyze, give a hard look at, the inability of many forest users, including the disabled and the elderly, to access the HNF and to recreate without first using motorized vehicles to reach the now closed areas.

154.     Further, the Record shows that the forest Service failed to properly analyze the economic and social impacts of its final decision to drastically reduce motorized vehicle access to large swaths of Forest, namely what impacts such decision has had on tourism, businesses supporting motorized recreation and to the long-established Montana culture of motorized recreation.  Such analysis was particularly required in light of the fact that the TMR was enacted, in part, to ensure that national forests land could continue to provide motorized opportunities in light of the "growing popularity and capabilities of [ORV]s. *Id.* at 68,265.  In addition, an adequate level of economic impact analysis is required given that OHV users generate an estimated $1.8 million in gas tax revenues.

155.     Further, the Record is devoid of any analysis as to the positive impacts on the human environment from having a wide number, and varied dispersed camping sites, *e.g.* the recreating public often seeks secluded and isolated locations on public lands for the express purpose of distancing themselves from other members of the public and enjoying some measure of solitude.

156.     The current covid-19 pandemic has demonstrated the high value to the human environment of motorized recreation and public lands access.  Recent data shows that the use of public lands has grown significantly since the start of the covid-19 pandemic.  Yet, the ROD and its supporting FEIS failed to adequately analyze the impact the road and trail closures would have given the great increase in public lands use.

157.     Studies show that the vast majority of public lands users enjoy activities associated with motorized access and recreation.  Further, the State of Montana adopted Montana Statewide Comprehensive Outdoor Recreation Plan (SCORP) for the 2014-2018 time period identified a pronounced need for more trails and paths on public lands to accommodate the needs of growing motorized use demands.  Yet, the Agency's final decision failed to take this information into account or to give a hard look at the benefits to the human environment, through such means as increased tourism or increased recreational opportunities, that would accrue if there was increased access to national forests lands

158.     Further, the Travel Management Rule requires the Forest Service to consider and properly analyze how its challenged decision and associated use maps affect cultural resources, provision of recreational opportunities and access needs among other criteria.  See, 36 C.F.R. § 212.55(a).  The public access restrictions approved of in the ROD have denied Montana Plaintiffs and others the ability to continue cherished and family-friendly recreational activities within the HNF that have been taking place for decades.  Further, the ROD has resulted in restricting access to the Forest for Plaintiffs and others to gather food and fuel.

159.     The Forest Service violated the TMR by failing to do anything but perfunctory analysis on the mandatory analysis criteria set forth in 36 C.F.R. §212 55(a) and (c) prior to adopting the ROD and use maps.

160.     In substance, any analysis performed was skewed to keeping Montana citizens from using the forest rather than to administer the HNF in such as way as provide for outdoor recreation, a legally recognized multiple use under MUYSA.  16 U.S.C. §528.

161.     NFMA makes clear that a primary use of national forest lands is for recreational use.  The ROD and associated user maps violate NFMA by prohibiting in some areas, and restricting in other areas, responsible recreation on and within thousands of acres of the HNF.

162.     Because they violate the TMR, NEPA, and NFMA, the ROD and 2016 use maps are arbitrary, capricious, an abuse of discretion, contrary to law, and issued without observance of procedure required by law, and so should be set aside pursuant to the APA. 5 U.S.C. § 706(2).

163.     Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.

164.     Plaintiffs have suffered, and will continue to suffer harm and injury to their legal interests arising from and associated with their use and enjoyment of the HNF as a result of the allegations contained in this claim for relief; and these injuries will go unredressed absent judicial relief.

### COUNT V –  The Forest Service's cumulative impact analysis is deficient.

165.     Plaintiffs reallege and incorporate by reference all allegations presented in the preceding paragraphs and further allege as follows.

166.    NEPA required that, prior to the adoption of the ROD and associated use maps, the Forest Service thoroughly assess, direct, indirect and cumulative environmental effects of its proposed decision.  42 U.S.C. §4332(2)(C); 40 C.F.R. Parts 1502 and 1508.

167.    Further, NEPA requires that where several agency actions have a cumulative or synergistic environmental effect, this consequence must be considered in an EIS.  *City of Tenakee Springs v. Clough*, 915 F.2d 1308, 1312 (9th Cir. 1990).

168.    As previously alleged, the Divide Travel Plan ROD closed off a number of roads and trails that were used for decades for responsible and legally permissible recreational purposes.

169.    These road and trail closures were another step in the decades-long effort of Defendants to restrict public access to and use of the HNF, such as those public lands motorized closures provided for in the 3-state OHV record of decision.

170.    The ROD and Plan Amendment for Montana, North Dakota and portions of South Dakota, adopted in January of 2011, eliminated most wheeled motorized cross-country in and across the Helena National Forest.  The 3-state OHV decision closed and/or restricted some 404,000 acres within the HNF to OHV use.

171.    The cumulative impact of these road and trail closures and other motorized closures in the Helena Lewis and Clark National Forest, including the Blackfoot Travel Plan, North Belts Travel Plan, South Belts Travel Plan, Tenmile Helena South, Clancy-Unionville Travel Management Plan, Elkhorn WMA travel plan plus motorized closures in nearby forests and Bureau of Land Management lands, has resulted in a greater concentrated use of roads and trails that have not, to date, been closed to motorized use.

172.      Roads and trails that remain open to motorized use and access are likely
experiencing increased use and impact due to lost recreational opportunities and closed
public access in other areas of the Forest.

173.      Those roads and trails designated as remaining open under the ROD are open to
use by and provide access to hikers, snowmobilers, bikers, campers, wood collectors,
sightseers, tourists, agriculture producers, and others members of the public.

174.      The possibility of the increased and cumulative environmental impact and damage
on roads and trails that remain open for public use and access under the ROD and
associated use maps was not thoroughly analyzed prior to the Department adopting the
challenged ROD and associated use maps.

175.      In addition, the cumulative environmental impact to fish and wildlife and species
caused by greater use of areas of the national forest that still remain publicly accessible
was not thoroughly analyzed prior to the Department adopting the challenged ROD and
associated use maps.

176.      The Department's decision to squeeze the public, including Plaintiffs, into
lawfully using fewer and fewer motorized routes will and has resulted in greater human
impacts into those area of the HNF that are proximate to and accessible by motorized use.
Such impacts could include environmentally-concerning increased erosion, soil
degradation, and sedimentation issues.  This scenario is neither environmentally or
socially supportable, and it certainly does not meet the requirements of NFMA to manage
public lands for multiple-use, including motorized recreation.

177.      Further, such decision clearly has the indirect environmental impact of limiting
access to the HNF for purposes of fire protection and management.  Due to climate

change and poor management risk-mitigation practices, such as removal of dead and dying timber, risk of fire is at an all-time high.  The risk to both the forest, to wildlife, and to the public associated with reducing motorized access to and within the HNF was not adequately considered or evaluated prior to the adoption of the ROD in clear violation of NEPA.

178.     The Divide Travel Management Plan project area covers some 155,500 acres of land managed for multiple use under NFMA.  With the adoption of the ROD, the number of miles of legally open roads and trails has been narrowed down by roughly 34% from its existing condition to an estimated 286 miles that lie within an area that is ideal for motorized recreation and designated for multiple use.  Such reduction includes the complete termination of single-track opportunities for motorcycles and the rerouting of their use to any trail remaining open to vehicles 50 inches or less in width.  ROD at p. 16.

179.     The cumulative and synergistic impact of this sustained reduction in areas open to motorized use and access over the last twenty (20) plus years both to multiple use interests and to environmental protection is missing from the record.  And, thus, the omission of this analysis violates NEPA.  *Sierra Club v. Penfold*, 857 F.2d 1307, 1320-21 (9th Cir. 1988).

180.     The ROD and the 2016 use maps are therefore arbitrary, capricious, and not in accordance with law and, thus, should be set aside pursuant to the APA. 5 U.S.C. § 706(2).

181.     Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.

182.    Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal

interests arising from and associated with their use and enjoyment of the HNF due to

Defendant's failure to comply with NEPA and NFMA, and these injuries will go

unredressed absent judicial relief.

**COUNT VI – Illegal restrictions on dispersed campsites**

183.    Plaintiffs hereby incorporate by reference each statement and allegation

previously made, and further allege as follows:

184.    Under NFMA, Forest Service actions must be consistent with the governing

Forest Plan.  16 U.S.C. § 1604(i).

185.    As of the time of the ROD, the governing HNF Forest Plan was the plan approved

by the then Regional Forester in 1986.

186.    That 1986 called for a forest-wise standard of maintain existing developed

campgrounds and picnic areas, while emphasizing dispersed recreation opportunities

across the Forest.  See, 1986 Forest Plan at p.II-14, Forest-Wide Objectives.

187.    The Final ROD and adopted Travel Plan does not conform to the then-existing

Forest-Wide objective of emphasizing the ability of the public to engage in dispersed

recreation opportunities.

188.    The Forest's Services challenged decision affirmatively closes existing dispersed

campsites, thereby violating its own adopted Forest-Wide objective of giving the public

to engage in dispersed recreation activities.

189.    Further, for those dispersed campsites that are identified as being allowed to

remain open to public use and recreation, such as those within 70 feet from the edge of a

designated route, and for other activities such as firewood cutting and gathering, the ROD limits parking to up to 30 feet from the edge of a designated route.

190.     The aforementioned 30 feet rule is arbitrary and capricious on its face, and further, does not comport with the relevant Forest Plan.

191.     The analysis performed by the Forest Service on both its 30 and 70 foot distance rule fails to adequately account for the loss of recreational and economic opportunities for the elderly and the disabled.

192.     Further, the analysis performed on these distance rules failed to properly analyze the negative social and recreational impacts on activities such as camping, fishing, solitude, relaxation for the public, including Plaintiffs, caused by the presence of dust and lack of adequate space from a road.

193.     There is little to no analysis as to public safety concerns for children and others who are camping within 70 feet of a road, particularly in light of the fact that multiple thousands of acres of public land have effectively been closed down to public access and use as a result of the adoption of the ROD.

194.     Given that other forests have adopted a more reasonable 300-foot rule and given the Forest Plan's management directive to increase opportunities for dispersed recreational opportunities, the ROD's 30/70 foot standards are arbitrary and capricious under the APA and are unlawfully inconstant with the HNF Forest Plan.

195.     Defendants' actions set forth above are made reviewable through the APA and are otherwise in violation of the APA, 5 U.S.C. § 706(2) and should, consequently, be declared unlawful and set aside by the Court.

196.     Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.

197.     Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associate with their use and enjoyment of the HNF as a result of the allegations contained in this legal claim and these injuries will go unredressed absent judicial relief.

**Count VII – Violations of the APA and request for an award of attorney's fees, costs and expenses of litigation as allowed by the Equal Access to Justice Act, 28 U.S.C. § 241 *et. seq.***

198.     Plaintiffs hereby incorporate by reference each statement and allegation previously made and further allege as follows:

199.     The Forest Service's legal violations as set forth above fail to lawfully comply with NFMA, NEPA, the TRM, are in violation of the APA, 5 U.S.C. §706(2).  Therefore, the Forest's Services ROD and associated use maps should be set aside by this Court, the matter should be remanded back to the agency to address the identified agency in accordance with law, and the Defendants should be enjoined from implementing the 2016 ROD and associated travel maps until such time as they are promulgated lawfully and in accordance with governing law, if ever.

200.     What is more, Plaintiffs' request, pursuant to the Equal Access to Justice act, 28 U.S.C. § 241 et seq. and/or any other applicable law or rule of court, an order awarding them their reasonable attorney's fees, costs, and expenses of litigation.

**REQUEST FOR RELIEF**

WHEREFORE, PLAINTIFFS PRAY FOR THE FOLLOWING RELIEF FROM THIS COURT:

A. For the legal and factual reasons set forth above, That the Court declare that the Forest Service's Divide Travel Plan Decision and associated use maps violate NEPA, NFMA, the Travel Management Rule, and the APA;

B. That the Court set aside and vacate the Divide Travel Plan Decision and associated use maps;

C. That the Court reinstate and order compliance with the former motorized use designations and use maps;

D. That the Court remand the applicable matters inadequately and/or unlawfully addressed in the ROD and associated Decision Maps for further analysis and action in accordance with applicable law;

E. That the Court award Plaintiffs permanent injunctive relief prohibiting the Forest Service from implementing the Divide Travel Plan Record of Decision pending compliance with governing law;

F. That the Court award, pursuant to the Equal Access to Justice Act, 28 U.S.C. §241 *et. seq* and other applicable law rule of Court, Plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees incurred as a result of having to file this litigation; and

G. That the Court grant Plaintiffs such further and additional relief as the Court may deem just and proper.


DATED this 25th day of February, 2022.


THE JAMES BROWN LAW OFFICE, PLLC

James E. Brown
*Attorney for Plaintiffs*