# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| CAPITAL TRAIL VEHICLE ASSOCIATION, CITIZENS FOR BALANCED USE, KEN SALO, JODY LOOMIS, and PATRICIA J. DAUGAARD, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FOREST SERVICE, NORTHERN REGION, U.S. DEPARTMENT OF AGRICULTURE, THE HELENA NATIONAL FOREST, and EMILY PLATT, <br><br> Defendants. | **CV-22-15-H-BMM** <br><br><br> **ORDER** |

## INTRODUCTION

Plaintiffs Capital Trail Vehicle Association ("CTVA"), Citizens for Balanced Use ("CBU"), Ken Salo, Jody Loomis, and Patricia J. Daugaard (collectively "Trail Riders") have filed this action against the U.S. Forest Service, Northern Region ("USFS" or "the agency"), U.S. Department of Agriculture ("USDA"), the Helena National Forest ("Forest"), and Emily Platt ("Platt") (collectively, "Federal Defendants"). (Doc. 1.) Helena Hunters & Anglers Association ("Helena Hunters") has intervened as an additional defendant. (Doc.

17.) Trail Riders, Federal Defendants, and Helena Hunters each have moved for summary judgment. (Doc. 33; Doc. 36; Doc. 39.)

## FACTUAL AND LEGAL BACKGROUND

The United States holds federal public lands in trust for the people. The federal government manages this land with the goal of balancing the interests of the land and water, wildlife, and people. NEPA requires federal agencies to analyze the environmental effects of proposed actions related to federal lands, publish the results of their analyses in the form of a draft Environmental Impact Statement ("EIS"), and solicit and respond to public comments to these proposals. *Westlands Water Dist. v. U.S. Dept. of Interior*, 376 F.3d 853, 864 (9th Cir. 2004).

Public participation constitutes an essential part of this process. Public debate regarding proposed agency actions ensures that the government's stewardship of public lands remains accountable and responsive to all stakeholders. All parties in this process have participated in vigorous public debate about the USFS decision challenged in this action. The Court commends this participation and recognizes its importance to the preservation of public lands access.

Plaintiffs CTVA and CBU are local nonprofit organizations that promote recreational motorized off-highway vehicles ("OHVs"). (*Id.* at 4–6.) OHVs include all-terrain vehicles, snowmobiles, and motorcycles. Trail Riders challenge USFS's adoption of the Divide Travel Plan ("Travel Plan") in March 2016. The Travel

2

Plan concerns USFS management and public use of the Divide area of the Forest.

(Doc. 37 at 11–12.) The Forest covers approximately 975,000 acres in west-central

Montana. (*Id.*) The Divide area includes designated critical habitat for threatened

Canada lynx, a travel corridor for grizzly bears, "key winter range for mule deer,

moose, and to a lesser extent, elk," and "some of the most productive bitterbrush

and aspen habitat in the Divide landscape." (i78_Divide045298;

i60_Divide044103–04, 44106.)

Trail Riders assert that the Travel Plan's changes and restrictions to OHV

use, particularly in the Sweeny Creek area, violate the National Environmental

Policy Act ("NEPA"), the USDA Travel Management Rule ("Travel Rule"), the

National Forest Management Act ("NFMA"), and the Administrative Procedure

Act ("APA"). (Doc. 1 at 2–3.) The Court will catalogue the administrative history

as part of its review of each of the claims presented.

Underlying Administrative History.

Executive Order 11644, issued in 1972, directed federal agencies to

designate permissible and prohibited areas for motorized use. (i60_Divide043579.)

Executive Order 11989, issued in 1979, emphasized the need for federal regulatory

policies to manage OHV use on public lands. (d2_Z2_Divide003252.) The Helena

National Forest Land and Resource Plan ("Forest Plan"), issued in 1986, serves as

the relevant local management plan for purposes of this action. (f1_Divide035837–

3

6126.) Forest Plan goals include providing quality motorized and non-motorized recreational opportunities; maintaining and enhancing wildlife habitat; and developing a "road management program with road use and travel restrictions that are responsive to resource protection needs and public concerns." (f1_Divide035845–46.)

The Bureau of Land Management ("BLM") and USFS published the Tri-State OHV Decision in 2001. The Tri-Sate OHV Decision prohibited wheeled, motorized cross-country travel outside of designated routes on BLM and National Forest System ("NFS") land in Montana, North Dakota, and part of South Dakota. (d2_Z2_Divide003250; i78_Divide045295.) USFS has amended the Forest Plan to adopt the 2001 Tri-State OHV Decision. (f2_Divide036305.) USDA issued the Travel Rule in 2005. 36 C.F.R. pt. 212 (2006); 70 Fed. Reg. 68, 264-05. The Travel Rule incorporated EO 11644 and ordered USFS to designate routes for motorized travel and to prohibit motorized travel outside those designated routes on NFS lands. (i60_Divide043579.)

USFS notified the public in December 2008 that it would begin the travel planning process for the Divide area. (a40_Divide000228; i78_Divide045295.) USFS requested public comment and advertised three open houses on the proposed travel plan. USFS published in the Federal Register a Notice of Intent to prepare an EIS in September 2011. (i78_Divide045295.) The agency began additional scoping

after it published the Notice of Intent. (Doc. 37 at 14.) USFS published its Draft

EIS in March 2014. (g3_T_Divide039717.) The Draft EIS contained proposed

Alternatives 1–4. The initial deadline for public comment on the Draft EIS fell on

April 28, 2014. (g47_Divide041365.) USFS later extended the deadline until June

12, 2014. (*Id.*)

USFS released Alternative 5 to the public in September 2014.

(i78_Divide045296.) USFS received approximately 90 comments related to

Alternative 5 over a 27-day public comment period. (i60_Divide043585;

i61_Divide045066–78.) USFS issued its Final EIS and Draft Record of Decision

("ROD") in April 2015. (i30_Divide041879; i31_Divide 042586;

i45_Divide043505.) USFS received 15 objections during the objection period.

(i78_Divide045296.) USFS held an objection resolution meeting on August 19,

2015, to address these issues. (*Id.*)

USFS re-issued the Final EIS in August 2015 after incorporating its

responses to the objections raised during the objection period. (i60_Divide043556;

i61_Divide044263.) USFS issued a Final ROD on March 1, 2016.

(i78_Divide045285.) The Final ROD largely adopted Alternative 5 in approving

the Travel Plan.

<u>Summary of Alternatives.</u>

The Court next will summarize the alternatives that USFS considered. The Court will focus on Alternative 5 in light of Trail Riders' legal arguments. Alternative 1 constituted the status quo, no-action alternative required by NEPA. (g3_T_Divide039733.) Alternative 2 reflected the agency's "initial proposal" for designating motorized roads and trails. (*Id.*) Alternative 3 provided increased non-motorized opportunities and reduced environmental impacts, in response to public input provided during scoping. (*Id.*) Alternative 4 focused on "social and resource concerns" and represented a combination of Alternatives 2 and 3. (*Id.*) USFS formulated Alternative 5 in response to public comments. (*Id.*) Alternative 5 constituted the "environmentally preferred alternative" in the FEIS. (i60_Divide043580.)

The Court takes a moment to compare the proposed effects of Alternative 5 on OHV and motorized use access with the other alternatives considered. Alternative 5 reflected an attempt to "better balance the interests of forest users," according to the agency. (i61_Divide045067.) Alternative 5 closed more roads and trails to motorized use, increased loop trails, and reduced redundant, parallel routes. (i60_Divide043600.) Alternatives 3, 4, and 5 proposed full closure of the Sweeny Creek area to motorized use with the exception of Priest Pass Road. (i60_Divide043597; i60_Divide043599; i60_Divide043581.) Alternative 5 designated 1.4 miles of unauthorized trails for motorized use. (i60_Divide043582.)

It also proposed reducing off-route motorized travel to 70 feet from a designated route. (*Id.*) Alternative 5 additionally provided for 82 dispersed camping sites located more than 70 feet off-route to remain available for motorized access. (i16_Divide041848; i78_Divide045291.)

Divide Travel Plan as Approved.

The Travel Plan as approved by USFS in March 2016 closes fewer road miles to motorized vehicles yearlong compared to Alternative 1. (ROD, i78_Divide 045320). The Travel Plan also contains 53 more miles of trails than Alternative 1. (*Id.*) More than 170 miles of roads remain open to highway-legal vehicles. (i78_Divide045290.) The Travel Plan opens 53 miles of trails to OHVs 50 inches or less in width, with the following seasonal restrictions: 12 miles of trails with no seasonal requirements; 36 miles of trails open from May 16 to August 31; and 5 miles of trails open from May 16 to October 14. (*Id.*)

The Travel Plan includes 86,600 acres open to over-snow vehicle ("OSV") use from December 2 to May 15. (*Id.*) USFS has decommissioned 43.6 miles of roads and has gated, barricaded, or posted signs detailing restrictions on 278 miles of roads since March 2016. (Doc. 37 at 16.) The Travel Plan fully closes Sweeny Creek to motorized vehicles with the exception of Priest Pass Road. (*Id.*) Forest users may travel up to 70 feet off-route via motorized vehicle to access dispersed

camping sites. (i78_Divide045291.) The Travel Plan preserves 82 dispersed camping sites more than 70 feet from designated routes for motorized access. (*Id.*)

Procedural History.

Trail Riders filed suit on February 25, 2022. (Doc. 1.) Trail Riders' Complaint includes the following seven causes of action: (1) failure to implement Alternative 1, in violation of NEPA's "hard look" analysis requirement; (2) arbitrary and capricious year-round closure of Sweeny Creek to motorized vehicles, in violation of NEPA and NFMA; (3) unlawful closure of Forest areas to motorized travel, in violation of NEPA and the Travel Rule; (4) "hard look" analysis failures, in violation of NEPA and NFMA; (5) deficient cumulative impact analysis, in violation of NEPA and NFMA; (6) "illegal restrictions on dispersed campsites" under the Forest Plan; and (7) other violations of APA § 706(2). (*Id.* at 17–35.) Trail Riders seek the following relief: declaratory judgment; vacatur of the Travel Plan; reinstatement of the former motorized use designations and use maps; remand of the Travel Plan to USFS; permanent injunctive relief prohibiting USFS from implementing the Travel Plan; and attorneys' fees and costs. (*Id.* at 35–36.)

Helena Hunters filed an unopposed motion to intervene on May 25, 2022. (Doc. 17.) United States Magistrate Judge Kathleen DeSoto granted the motion to intervene on May 31, 2022. (Doc. 20.)  Federal Defendants filed the

Administrative Record on August 2, 2022. (Doc. 31.) Trail Riders moved for

summary judgment on August 9, 2022. (Doc. 32.) Federal Defendants filed a

cross-motion for summary judgment on September 9, 2022. (Doc. 36.) Helena

Hunters filed an additional cross-motion for summary judgment on September 23,

2022. (Doc. 39.) Trail Riders filed a combined response on October 11, 2022.

(Doc. 41.) Federal Defendants and Helena Hunters filed their replies on October

24, 2022, and November 11, 2022, respectively. (Doc. 42; Doc. 43.) The matter

was reassigned to the Court on December 21, 2022. (Doc. 45.) The Court

conducted a hearing on the cross-motions for summary judgment on January 9,

2023. (Doc. 46.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect

the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A genuine material fact dispute requires sufficient evidence for a

reasonable jury to return a verdict for the nonmoving party. *Id*. at 248. Cases

involving review of agency action under the APA generally should be resolved

through summary judgment. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

1468, 1472 (9th Cir. 1994). "[T]he court's review is limited to the Administrative Record" without the need for fact-finding. *Id.*

## DISCUSSION

### I.     Motions for Summary Judgment.

A district court reviews federal agency decisions under the judicial review provisions of the APA set forth at 5 U.S.C. §§ 701–706. *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc); *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc). A court may set aside an agency action only if it proves "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

An agency action proves arbitrary and capricious only where "the agency has relied on factors which Congress has not intended it to consider," failed to consider important factors, offered an explanation for its decision inconsistent with the record, or the agency's decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1033 (9th Cir. 2020) (internal citation omitted). "[T]he reviewing court may not substitute its judgment for that of the agency." *Env't. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 858 n.36 (9th Cir. 2003). A reviewing court will affirm an agency decision under NEPA if it determines that the agency possessed a reasonable basis for its decision. Courts similarly defer to

agency interpretation of an applicable forest plan under NFMA unless that

interpretation proves "plainly erroneous." *Siskiyou Reg'l Educ. Project v. U.S.*

*Forest Serv.*, 565 F.3d 545, 555 (9th Cir. 2009).

Trail Riders level the following arguments in support of their motion for

summary judgment: (1) that USFS considered an unlawful set of alternatives in its

NEPA analysis; (2) that the closure of Sweeny Creek to motorized vehicles lacked

support in the Administrative Record; (3) that restrictions on dispersed camping

access lacked adequate agency review and rationale; (4) that USFS failed to carry

out site-specific analyses; (5) that USFS arbitrarily and capriciously limited the

scope of its cumulative effects analysis; and (6) that USFS violated a Forest Plan

requirement to keep the majority of existing roads open. (Doc. 34 at 17–47.) The

Court will consider in turn each of the six issues.

## A. Alternatives Considered by USFS in its NEPA Analysis.

Trail Riders challenges USFS's NEPA alternatives analysis on four grounds.

### 1.  Inclusion of No-Action Alternative.

Trail Riders first contend that USFS improperly included a no-action

alternative (Alternative 1) that would have failed to comply with the 2005 Travel

Planning Rule, and, therefore, "was directly contrary to the purpose [] and need of

the action." (Doc. 34 at 22.) This argument lacks merit. NEPA implementing

regulations mandate the inclusion of a no-action alternative in an agency's array of

proposed alternatives. 40 C.F.R. § 1502.14(d). NEPA requires a no-action alternative to facilitate a "meaningful comparison" between the status quo and proposed alternatives. *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 623 F.3d 633, 646 (9th Cir. 2010).

    2.  <u>Absence of Pro-Recreation Alternative.</u>

Trail Riders next argue that USFS erred by failing to identify or evaluate a "viable Pro-Recreation motorized alternative." (Doc. 34 at 22.) Trail Riders cite *Westlands* for the proposition that "[t]he existence of a viable but unexamined alternative renders an environmental impact statement inadequate." 376 F.3d at 868 (quoting *Morongo Band of Mission Indians v. Fed. Aviation Admin.*, 161 F.3d 569, 575 (9th Cir. 1998)). Federal Defendants assert that USFS complied with NEPA because it included a reasonable range of action alternatives that all complied with the Travel Rule. (Doc. 37 at 22–23, 29.)

USFS need not consider every available alternative. USFS must consider the alternatives necessary to permit a reasoned choice. *Headwaters, Inc. v. Bureau of Land Mgmt.*, 914 F.2d 1174, 1181 (9th Cir. 1990). The "[t]ouchstone" for a court's inquiry is whether the selection of alternatives "fosters informed decision-making and informed public participation." *Morongo Band*, 161 F.3d at 575. *Westlands* fails to support Trail Riders' contention that USFS's range of alternatives proves unreasonable. 376 F.3d at 872.

USFS in *Westlands* had considered six proposed alternatives for a salmon and trout fisheries restoration project on the Trinity River in California. *Id.* at 860–61. The Ninth Circuit noted that the agency's proposed alternatives represented a range of water flow levels and non-flow options such as habitat rehabilitation and fish population management. *Id.* at 870, 872. The Ninth Circuit determined that the range of alternatives proved reasonable on the basis that the alternatives had "foster[ed] informed decision-making and informed public participation." *Id.* at 872 (internal citation omitted). The Administrative Record demonstrates that USFS, as in *Westlands*, considered a range of alternatives that "foster[ed] informed decision-making and informed public participation." *Id.* (*See, e.g.*, i60_Divide043585; i61_Divide044419-45022; 45066-45078; h1_Z28_Divide041485.)

Alternative 1 mirrored the status quo, no-action alternative required by 40 C.F.R. § 1502.14(d). (g3_T_Divide039733.) Alternative 2 constituted the agency's "initial proposal" for designating motorized roads and trails. (*Id.*) Alternative 3 reflected an increase in non-motorized opportunities and a reduction in environmental impacts, in response to public input provided during scoping. (*Id.*) Alternative 4 focused on "social and resource concerns" and represented a combination of Alternatives 2 and 3. (*Id.*) USFS formulated Alternative 5 in response to public comments. (*Id.*) Alternative 5 presented the "environmentally

preferred alternative" in the FEIS. (i60_Divide043580.) USFS's range of

alternatives proves reasonable under NEPA.

    3.  <u>Supplemental EIS for Alternative 5.</u>

    Trail Riders additionally argue that USFS's creation of Alternative 5 after

issuance of the DEIS and completion of the comment period should have triggered

the preparation of a supplemental EIS. (Doc. 34 at 23.) Trail Riders cite no case

law to support this argument. (*Id.* at 16–17; Doc. 41 at 15–20.) Trail Riders instead

direct the Court to 40 C.F.R. § 1502.9. (Doc. 34 at 24.) This provision of the

NEPA implementing regulations states that an "agency shall prepare and publish a

supplemental draft of the appropriate action" if a DEIS proves "so inadequate as to

preclude meaningful analysis." 40 C.F.R. § 1502.9.

    Section 1503.4 of 40 C.F.R. does not require that an agency's final decision

exactly match the alternatives disclosed in the draft EIS. 40 C.F.R. § 1503.4 (a)(1).

The regulations instead permit an agency to modify a proposed action based upon

public comments received on a draft EIS. *Id.* An agency must restart the NEPA

process and prepare a supplemental EIS only if the agency "makes substantial

changes in the proposed action that are relevant to environmental concerns" or if

"[t]here are significant new circumstances or information relevant to the

environmental concerns and bearing on the proposed action." *Id.* § 1502.9(c).

The Ninth Circuit has confirmed that NEPA requires a supplemental EIS "only if changes, new information, or circumstances may result in significant environmental impacts 'in a manner not previously evaluated and considered.'" *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1157 (9th Cir. 2008) (internal citation omitted). *Sierra Trail Dogs Motorcycle & Recreation Club v. U.S. Forest Service* lends further support to Federal Defendants and Helena Hunters' arguments. 470 F. Supp. 3d 1186, 1195–96 (D. Nev. 2020). The court in *Sierra Trail Dogs* determined that USFS was not required to complete a supplemental EIS where the decision proved more protective of the environment "but negatively impact[ed] the interest of user groups whose users harm the environment." *Id.* at 1196.

All of USFS's proposed alternatives relied upon the same specialist reports. (i60_Divide043627-4256.) The agency reasonably concluded that Alternative 5 did not represent the product of "new information" requiring an additional EIS and that it would not result in significant, previously undisclosed environmental effects. 40 C.F.R. §§ 1502.9(c). Alternative 5, as with the alternative at issue in *Sierra Trail Dogs*, proves more protective of the environment than the initial action alternatives (Alternatives 2 through 4). 470 F. Supp. 3d at 1195–96. Similar to the determination in *Sierra Trail Dogs*, the agency's selection of a more protective alternative that "negatively impact[ed] the interest of user groups whose users

harm the environment" does not require a supplemental EIS under NEPA. *Id.*
USFS did not err in deciding not to conduct a supplemental EIS. 40 C.F.R. §§
1502.9(c), 1503.4 (a)(1).

    4. Selection of Alternative 5.

    Trail Riders' final argument with respect to the NEPA alternatives analysis
concerns the agency's selection of Alternative 5. Trail Riders assert that the
decision proved arbitrary and capricious, illegal, unsupported by substantial
evidence, and an abuse of discretion. (Doc. 34 at 24.) Trail Riders argue that USFS
adopted Alternative 5 "with no real analysis;" without "adequate documentation
and rationale for public input;" without "giv[ing] the public adequate notice and
opportunity to comment;" without "mak[ing] a decision based on substantial
evidence;" and without "tak[ing] a hard look" at Alternative 5's impact on Forest
resources and use. (*Id.*) Trail Riders take particular issue with the fact that USFS
developed Alternative 5 after expiration of the public comment period from March
to June 2014. (*Id.* at 25.) Trail Riders argue that USFS violated 36 C.F.R. §§
218.5(a), 219.53(a) and 40 C.F.R. § 1503.1(a)(1). (Doc. 34 at 26.)

    Federal Defendants contend that USFS's development and selection of
Alternative 5 complied with NEPA and the Travel Rule. (Doc. 37 at 29, 31–34.)
Federal Defendants explain that USFS offered timely public comment on the DEIS
and Alternatives 1-4, as well as on Alternative 5. (*Id.* at 32.) Federal Defendants

also attach press releases and a declaration from Katherine Bushnell, District Ranger for the Helena Ranger District, regarding the duration of the Alternative 5 comment period. (*Id.* at 33–34; Doc. 38 at 1.) Federal Defendants emphasize that the Administrative Record already established this information. (Doc. 37 at 33–34.) Trail Riders characterize the inclusion of the press releases and declaration as evidence that Federal Defendants unlawfully "sandbagged" them. (Doc. 41 at 7.)

Information already available in the Administrative Record with respect to the Alternative 5 comment period undermines Trail Riders' assertion. USFS properly conducted a public comment period on Alternatives 1 through 4 from March to June 2014. (*Id.* at 25.) USFS developed Alternative 5 in response to feedback provided during this public comment period. (g3_T_Divide039733.) USFS bore no obligation to hold a second public comment period. 40 C.F.R. §§ 1503.4 (a)(1), 1502.9(c). USFS nevertheless reopened the public comment period to solicit feedback on Alternative 5 over an additional 27 days. (i60_Divide043585; i61_Divide045066–78.) USFS provided proper notice of the second public comment period. (i60_Divide043585; h18_Divide041777; h19_Divide041779; h20_Divide041780.) Trail Riders, including CTVA, participated actively in the second public comment period. (h1_Z28_Divide041485–86; i60_Divide043585; h18_Divide041777; h19_Divide041779; h20_Divide041780.) This claim is not well-taken.

17

Federal Defendants additionally challenge Trail Riders' standing for their claim that USFS provided inadequate notice and opportunity for public participation. (*Id.* at 31–32; Doc. 42 at 18–19.) Federal Defendants highlight that Trail Riders had actual notice of the public comment process and actually participated in the public comment process. Federal Defendants contend that Trail Riders' notice of the public comment process and their participation in that process deprive them of standing. *Citizens' Cmty. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1025–26 (10th Cir. 2002). (Doc. 37 at 32.)

Trail Riders respond to the standing challenge by repeating their claims about insufficient notice and public participation. (Doc. 41 at 20–24.) Trail Riders contend that plaintiff organizations CTVA and CBU adequately have pled associational standing. (*Id.* at 21.) Trail Riders assert in their Response that one of CTVA's members, Doug Abelin ("Abelin"), was unable to comment on Alternative 5 because of the insufficient length of the additional comment period. (Doc. 41 at 18–19.)

Section 6912 of Title 7 of the U.S. Code requires a plaintiff to "exhaust all [applicable] administrative appeal procedures" before bringing suit against an agency. 7 U.S.C. § 6912(e). USFS judicial review regulations specify that the objection process "present[s] a full and fair opportunity" for the public to raise their concerns with the agency. 36 C.F.R. § 218.14(a). "[I]ndividuals and groups

18

must structure their participation so that it . . . alert[s] the agency of [their] position." *Id.* § 218.14(b). A failure to comply with this administrative exhaustion requirement renders a federal-court challenge "premature and inappropriate." *Id.* § 218.14(b) (citing 7 U.S.C. § 6912(e); 16 U.S.C. § 6515(c)).

The Court agrees with Federal Defendants that the comment letter from CTVA, one of the plaintiff organizations in this action, on Alternative 5 adequately represented the interests of its member Abelin. The CTVA comment letter expressly stated that "[w]e have assembled the following information and issues from our members and other interested motorized recreationalists." (h1_Z28_Divide041485.) The letter was signed "on behalf of [CTVA's] 136 members," and listed Abelin as a contact. (h1_Z28_Divide041486.) Trail Riders neglected to object to the public comment period for Alternative 5. Trail Riders failed to exhaust their administrative remedies. 36 C.F.R. § 218.14(b); 7 U.S.C. § 6912(e). Trail Riders lack standing for this claim. *Citizens' Cmty. to Save Our Canyons*, 297 F.3d at 1025–26.

Trail Riders' other claims regarding Alternative 5 fail. The Administrative Record belies Trail Riders' claims that the agency's decision contained "no real analysis" and lacked "substantial evidence." (Doc. 34 at 24.) The length of the public comment periods, amounting to approximately four months in total, reflects the agency's efforts to involve the public. (g47_Divide041365; i60_Divide043585;

i61_Divide045066-78.) USFS developed Alternative 5 in response to public comments on the DEIS. (i61_Divide045067.) USFS provided a second comment period despite possessing no obligation to do so. (i61_Divide045066-78.) USFS responded to all public comments in the FEIS. (i61_Divide044419; i61_Divide044426-33.)

The ROD explains that monitoring by USFS staff and public feedback demonstrated "numerous areas" within the Travel Plan area where roads and trails were "causing resource concerns and/or damage." (i78_Divide045290.) USFS explained its decision not to designate certain routes as "necessary to address the needs of the resources affected while maintaining motorized and non-motorized access across the planning area." (*Id.*) USFS's selection of Alternative 5 bears a rational relationship to the facts considered, in compliance with NEPA, the Travel Rule, and the APA.

## B. Closure of Sweeny Creek.

Trail Riders argue that USFS provided an "ex post facto justification" for closing Sweeny Creek. (Doc. 34 at 29, 31.) Trail Riders contend that "substantial evidence" represents the applicable standard for reviewing USFS's decision. *Bark v. United States Forest Serv*., 958 F.3d at 865, 869 (9th Cir. 2020). Federal Defendants suggest that the "substantial evidence" standard applies only in the context of formal agency rulemaking and adjudications. 5 U.S.C. § 706(2)(E).

(Doc. 37 at 35.) Judicial review of notice-and-comment rulemaking, as discussed above, employs the "arbitrary and capricious" standard supplied by Section 706(2)(A) of the APA. 5 U.S.C. § 706(2)(A). This standard requires a rational relationship between the facts considered and the agency decision. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

Trail Riders argue that USFS's decision lacked the support of "substantial evidence" in the Administrative Record. (Doc. 34 at 29, 31; Doc. 41 at 25.) Trail Riders seize upon the lack of a singular document in the Administrative Record that identifies when the public comment period for Alternative 5 began and ended. (Doc. 34 at 19.) Trail Riders also state that USFS "ignored multiple CTVA comments" regarding route maps for Sweeny Creek that suggested smaller OHV loop routes appropriate for children and beginners. (*Id.* at 31.) Trail Riders additionally allege that USFS failed to accept an offer from CTVA to help with clean-up and maintenance of Sweeny Creek and its proposal for a 10:00 P.M. nightly closure. (*Id.*)

Trial Riders' arguments about the agency having provided inadequate notice of the second public comment period and the agency having "ignored" CTVA's comments fall short. The Administrative Record documents the agency's public communications regarding the second public comment period. (i60_Divide043585; h18_Divide041777; h19_Divide041779; h20_Divide041780.) USFS bore no

21

obligation to accept proposed routes or other suggestions from CTVA or any other stakeholder. Trail Riders' public comment actually acknowledges "degradation [of the Sweeny Creek area] from littering and vandalism, keggers in the middle of the night, paintballers, people shooting guns, and abuse of the land from some OHV users." (g2_K_Divide038273.) USFS met with CTVA and other motorized user groups. (*See* a6_Divide000079; a20_Divide000164; a21_Divide000165; *see also* h1_Z28_Divide41485.) USFS responded to every public comment in the FEIS. (i61_Divide044419-45022; i61_Divide044426-33.)

Federal Defendants highlight the material in the Administrative Record supporting Sweeny Creek's closure. (i60_Divide043971, 44018; c49_Divide002652; d2_X_Divide003246; d2_Y_Divide003247; d2_Z_Divide003248; d2_Z1_Divide003249; d4_C_Divide003412-15; d9_Z47_Divide006278.) Helena Hunters marshals additional illustrative quotes and photographs from the public comment period that demonstrate damage to the Sweeny Creek area. (h1_Z9_Divide041457; h1_Z1_Divide041444-45; g2_Z20_Divide038490-91; g2_Z115_038816-18; g2_X_Divide038344; g2_Z115_Divide038817; g2_Z115_Divide038818; g2_Z115_Divide038816; h1_F_Divide041416.)

Federal Defendants and Helena Hunters also distinguish between an agency decision to *close* an area for motorized use compared to a decision to *designate* an

22

area for motorized use. Federal Defendants and Helena Hunters argue that the

Travel Rule minimization criteria, codified at 36 C.F.R. § 212.55, only apply to

designating areas for motorized use. (Doc. 37 at 51; Doc. 42 at 28; Doc. 43 at 16.)

This regulation provides as follows: "*In designating* National Forest System roads

[and] trails . . . *for motor vehicle use*, the responsible official shall consider effects

on [list of considerations]. 36 C.F.R. § 212.55 (emphasis added).

The minimization criteria aim to ensure that designations of Forest System

roads and trails for motorized use appropriately balance and mitigate

environmental impacts. The minimization criteria apply only in the context of

agency decisions to designate roads or trails for motorized use. 36 C.F.R. § 212.55.

The agency's decision *not to designate* the Sweeny Creek area for motorized use

fails to implicate the minimization criteria.

The agency has demonstrated a rational relationship between the facts that it

considered and its decision to close Sweeny Creek to motorized use. This

information included the area's habitat, then-existing "formidable barriers" to

wildlife movement, and public comments, field notes, and photos of Sweeny Creek

that documented environmental degradation of the area from OHV use, and big

game activity near OHV trails. (i60_Divide043971, 44018; c49_Divide002652;

d2_X_Divide003246; d2_Y_Divide003247; d2_Z_Divide003248;

d2_Z1_Divide003249; d4_C_Divide003412-15; d9_Z47_Divide006278;

h1_Z9_Divide041457; h1_Z1_Divide041444-45; g2_Z20_Divide038490-91;

g2_Z115_038816-18; g2_X_Divide038344; g2_Z115_Divide038817;

g2_Z115_Divide038818; g2_Z115_Divide038816; h1_F_Divide041416.) USFS's

decision to close Sweeny Creek to motorized use, with the exception of Priest Pass

Road, complied with NEPA, the Travel Rule, and the APA.

### C. Dispersed Camping Restrictions.

Trail Riders challenge USFS's decision to restrict motorized access to

dispersed camping in the Travel Plan. The Travel Plan reduces motorized access to

dispersed camping from a distance of 300 feet to 70 feet from designated trails.

(i78_Divide045291.) Trail Riders assert that this distance reduction proves invalid

because it "had not been analyzed or discussed" by USFS and that "the public had

no notice of it or opportunity to comment until Alternative 5." (Doc. 34 at 32.)

Trail Riders cite no regulatory standards or favorable case law in support of this

argument.

Federal Defendants reject Trail Riders' contention that the Travel Plan

restricts dispersed camping. Federal Defendants note that the Travel Plan has no

impact on non-motorized access to dispersed camping. (Doc. 37 at 37.) Federal

Defendants acknowledge that the Travel Plan reduces the distance that a motorized

vehicle can be used off designated routes (from 300 to 70 feet) to access dispersed

camping. (*Id.*) Federal Defendants further note that the Travel Plan includes an exception for motorized access to 82 dispersed camping sites. (i78_Divide045291.)

*Russell Country Sportsmen v. U.S. Forest Service* involved a challenge leveled by an OHV group against a USFS reduction in motorized access distance from 300 to 70 feet for dispersed camping. 668 F.3d 1037, 1047–49 (9th Cir. 2011). The Ninth Circuit determined that the motorized access distance reduction represented a "relatively minor" part of the Travel Plan that did not require a supplemental EIS. *Id.* at 1048–49. The dispersed camping reduction at issue here involves identical distances. *Id.* As in *Russell Country*, the motorized access distance reduction at issue here proves a "relatively minor" part of the overall Travel Plan. *Id.*

USFS has explained that in making its dispersed camping decision it considered comments received on the DEIS and additional field review of dispersed sites in 2014. (i60_Divide043617.) This evidence showed an increase in "the number of routes being developed for dispersed camping and firewood cutting" causing "an increase in ground disturbance." (*Id.*) USFS noted that resource damage included vegetation disturbance, damage to stream banks and other riparian areas, trash, soil erosion and compaction, and displacement of wildlife. (*Id.*; d6_O_Divide003715; i78_Divide045299; i60_Divide043967.) USFS

anticipated that Alternative 5's dispersed camping provisions would "largely eliminate[]" these resource impacts. (i60_Divide043967.)

The agency has demonstrated a rational relationship between the facts it considered and its decision to reduced motorized access for dispersed camping from 300 to 70 feet from trails. The inclusion of 82 dispersed camping sites more than 70 feet from designated routes for motorized use further demonstrates that USFS's decision with respect to dispersed camping complied with NEPA, the Travel Rule, and the APA.

### D. Site-Specific Analyses.

Trail Riders next argue that USFS failed to conduct site-specific analyses as required by NEPA and NFMA. (Doc. 34 at 35–36.) Trail Riders allege that the Administrative Record contains "no evidence" of site-specific study or analysis that would satisfy the Travel Rule and the Forest Plan. (*Id.* at 36.) USFS's site-specific analyses included examining route stream crossings, categorizing routes by landscape and soil texture, identifying stream bank damage, taking inventory of roads and route hydrologic condition, inventorying road sediment, creating route-by-route condition report and comparisons by alternative. (d6_C_Divide003608; d6_E_Divide003613-20; d6_G_Divide003623-24 ; d6_L_Divide003672; d6_N_Divide003693-95; d6_O_Divide003696-7; d6_P_Divide003723- d6_Z94_Divide003932; d7_I_Divide004153; d8_Z3_Divide004577;

d8_Z4_Divide004578; d10_E_Divide009455-480. These site-specific analyses included routes specific to Alternative 5. (d6_O_Divide003712; d4_A_Divdie003396-407; i60_Divide04368.) USFS's site-specific analyses complied with NEPA, NFMA, and the APA.

### E. Cumulative Effects Analysis.

Trail Riders assert that USFS's cumulative effects analysis proved arbitrary and capricious when the agency limited the scope and scale of the analysis. (Doc. 34 at 41–47.) NEPA regulations set forth that "cumulative effects" include "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions." 40 C.F.R. § 1508.7. Trail Riders present two related arguments: (1) that USFS unlawfully limited the geographic scope of its analysis; and (2) that the effects analysis failed to consider the potential impacts of decreased motorized use, including the potential of concentrating OHV use into smaller areas. (*Id.* at 42–46.)

### i.  Environmental Impacts.

Trail Riders first claim that USFS failed adequately to consider the environmental, social, and economic impacts of "sharp reductions in motorized use." (Doc. 34 at 36–40.) Federal Defendants emphasize that NEPA requires consideration of potential environmental impacts rather than potential impacts to people's recreational experiences. (Doc. 37 at 44; Doc. 42 at 24–26.) *Bicycle Trails*

*Council of Marin v. Babbitt* proves particularly relevant to Trail Riders' arguments about overcrowding and potential adverse environmental impacts of closing some trails to OHVs. 82 F.3d 1445, 1446 (9th Cir. 1996).

*Bicycle Trails Council* involved a NEPA challenge brought by bicycling associations to the National Park Service's adoption of regulations governing bicycle use in a National Recreation Area. *Id.* at 1449–51. The regulations prohibited all bicycle use on certain trails. *Id.* at 1451. The plaintiffs argued that the regulations proved arbitrary and capricious, in part, because the agency "failed to consider the significant impact on traffic and safety of crowding bicycles" onto fewer trails in the National Recreation Area. *Id.* at 1466. The plaintiffs also warned that closing some bicycle trails "might force bicyclists to ride in other areas, thereby compromising the nature of those areas." *Id.* at 1457.

*Bicycle Trails Council* rejected the plaintiffs' overcrowding argument for two reasons. The Ninth Circuit first observed that "NEPA does not require that an agency take into account every conceivable impact of its actions, including impacts on citizens' subjective experiences." *Id.* at 1466. NEPA requires instead that an agency consider "environmental impacts on the physical 'world around us.'" *Id.* The Ninth Circuit dismissed as "incorrect" the "[p]laintiffs' argument that bicyclists being crowded onto fewer trails is such an environmental impact[.]" *Id.* Trail Riders' contention about concentrating OHV use as a result of the Travel

Plan fails for the same reason. It does not qualify as an "environmental effect" for the purposes of the NEPA cumulative effects analysis. *Id.*

*Bicycle Trails Council* additionally noted that the agency reasonably had determined that any increased trail congestion would be insignificant relative to the "increasing popularity" of mountain biking. *Id.* at 1467. Trail Riders' emphasis on increasing OHV use in Montana undermines their cumulative effects analysis argument. (*Id.* at 37.) Adverse impacts caused by more concentrated OHV use may occur regardless because of the increasing demands on National Forests, similar to the increasing popularity of mountain biking in *Bicycle Trails Council*. 82 F.3d at 1467. Moreover, to the extent OHV use causes environmental damage, this potential damage lends further support to USFS's decision to limit motorized use within the Divide planning area. (Doc. 34 at 40–41; Doc. 37 at 47.)

### ii. Geographic Scope.

"[U]nder NEPA [a reviewing court will] defer to an agency's determination of the scope of its cumulative effects review." *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1071 (9th Cir. 2002). An agency decision about the appropriate geographic scope for a cumulative impacts analysis warrants deference on the basis that it "is a task assigned to the special competency of the appropriate agencies." *Kleppe v. Sierra Club*, 427 U.S. 390, 413 (1976). Trail Riders allege,

without support, that USFS "arbitrarily" limited the geographic scope of its cumulative effects analysis to the Divide Travel Planning area. (Doc. 34 at 42.)

The Administrative Record reveals that USFS tailored the geographic scope of its analysis on a resource-by-resource basis. (i61_Divide044379-396.) The geographic scope of the cumulative effects analysis for "general habitat" included the "Divide landscape (Forest land with non-Forest inholdings) and immediately surrounding lands (private, State, County, Municipal, and BLM)." (i60_Divide043965.) The geographic scope for "connectivity" included the Divide landscape, neighboring Forest lands (Lincoln Ranger District and Beaverhead-Deerlodge National Forest), as well as neighboring non-Forest lands. (i60_Divide043976.) (acknowledging that the 2001 OHV decision improved connectivity and habitat quality).

The geographic scope for "recreation" considered travel management decisions for the surrounding areas as well those affected by the 2001 Tri-State OHV decision. (i60_Divide043639-40.) Trail Riders' cumulative effects analysis arguments fail. USFS's analysis comported with NEPA's requirements. 40 C.F.R. § 1508.7.

## F.  Helena Forest Plan Requirements.

USFS must "comply with the regulations and forest plan in place at the time of its decision." *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 932 n.8 (9th

Cir. 2010). A reviewing court must defer to USFS's interpretation of forest plan directives unless that interpretation proves "plainly erroneous." *Siskiyou Reg'l Educ. Project*, 565 F.3d at 555. Trail Riders argue that the Forest Plan requires a majority of existing roads to be kept open. (Doc. 34 at 36.) This argument lacks textual support.

Trail Riders quote part of a line from the Forest Plan providing that "[m]ost existing roads will be left open." (*Id.* at 11 (quoting f1_Divide035875).) The full line reads as follows: "Although most existing roads will be left open, "[r]oad management decisions will [be] based on user needs, public safety, resource protection, and economics." (f1_Divide035875.) The Forest Plan states that "[u]naccptable damage to soils, watershed, fish, wildlife, or historical/archeological sites will be mitigated by road restrictions or other road management actions as necessary." (*Id.*) The Forest Plan contemplates that "[p]ublic concern may necessitate restriction or opening some roads, trails, or areas." (f1_Divide035876.)

Among other goals, the Forest Plan seeks to "[p]rovide a range of quality recreation, including motorized and nonmotorized opportunities, in an undeveloped forest environment." (f1_Divide035845.) The Forest Plan contains no express requirement that USFS keep a majority of existing roads open to motorized use. Trail Riders have failed to demonstrate any abuse of discretion on the part of

USFS. The Court will defer to USFS's interpretation of the Forest Plan directives. *Siskiyou Reg'l Educ. Project*, 565 F.3d at 555.

### G. Entitlement to Injunctive Relief.

Federal Defenders and Helena Hunters contend that Trail Riders have failed to demonstrate entitlement to vacatur or to permanent injunctive relief. (Doc. 37 at 53–55; Doc. 40 at 34–36.) Federal Defenders and Helena Hunters argue that vacatur would prove inappropriate should the Court find a statutory violation. Nearly seven years have passed since USFS adopted and began implementing the Travel Plan in March 2016. Federal Defenders and Helena Hunters assert that vacating the decision would impose significant hardship on USFS and the public. (Doc. 37 at 53–55; Doc. 40 at 35.) Federal Defenders and Helena Hunters also emphasize that Trail Riders have failed to address any of the legal requirements for injunctive relief. (Doc. 37 at 53–55; Doc. 40 at 35–36.) Trail Riders urge the Court not to make a decision on remedy at this time and request that the Court instead order supplemental briefing. (Doc. 41 at 34.)

The Court declines to rule on the parties' arguments regarding injunctive relief in light of the Court's decision to grant summary judgment in favor of Federal Defenders and Helena Hunters.

**CONCLUSION**

The Administrative Record reveals the years of careful and thorough study that USFS has devoted to the question of how best to balance the interests of Forest users in the Divide area. The Court acknowledges Trail Riders' concerns that USFS subverted the NEPA process. The public had adequate opportunity, however, to demand full discussion of a wide range of concerns and priorities through the administrative process prescribed by NEPA. The Court lauds Trail Riders and Helena Hunters' efforts to participate actively in this public process, as well as USFS's diligence in soliciting and responding to public feedback.

Federal Defendants and Helena Hunters have established as a matter of law that USFS complied with NEPA and NFMA in adopting the Travel Plan. USFS "struck a reasoned balance among the sometimes competing" goals of resource protection and recreation, as well as the "sometimes competing goals" of OHV users and other forest users. *Bicycle Trails Council*, 82 F.3d at 1468. "To call such agency action arbitrary and capricious simply because one disapproves of the outcome reached would be to distort the purposes of [the] APA and NEPA." *Id.* Trail Riders' challenges to the 2016 Travel Plan fail. The Court will deny Trail Riders' motion for summary judgment (Doc. 33) and will grant Federal Defendants' and Helena Hunters' motions for summary judgment (Doc. 36; Doc. 39).

33

**ORDER**

Accordingly, **IT IS ORDERED:**

1. Federal Defendants' Motion for Summary Judgment (Doc. 36) and Helena

   Hunters' Motion for Summary Judgment (Doc. 39) are **GRANTED.**

2. Plaintiffs' Motion for Summary Judgment (Doc. 32) is **DENIED.**

3. The Clerk shall enter judgment in favor of Federal Defendants and Helena

   Hunters.

   DATED this 10th day of March, 2023.

   _____
   Brian Morris, Chief District Judge
   United States District Court